## PARDEE v. KUSTER ET AL.

APPEAL AND ERROR—PREJUDICIAL AND HARMLESS ERROR—SUFFICIENCY
OF PETITION TO SUPPORT A DIFFERENT JUDGMENT—WILLS—TESTA-
MENTARY DEED—CODICILS—CONSTRUCTION OF WILLS—REVOCATION.

1. Where the plaintiff complains on error of a judgment in
   defendant's favor, the latter may question the sufficiency
   of the petition to support a judgment for plaintiff, since, if
   the petition be insufficient for such purpose, the judgment
   cannot be regarded as prejudicial to plaintiff.
2. A deed which is in fact a codicil to a will must be construed
   as a part thereof.
3. In the construction of a will with codicils the terms of a
   codicil later in date must govern when repugnant to or
   in conflict with the terms of the will or prior codicil
   thereto.
4. The word "will," in the sense of a testamentary disposition
   of property, and the rule governing the construction of
   such instruments, includes the will first executed, together
   with all codicils added thereto, and the meaning and effect

of which, taken together, is reaffirmed or changed by the last codicil; the will so changed or reaffirmed speaks from the date of its republication by the last codicil.

5. A codicil is to be held to change a will only in so far as the intent is manifest, and the provisions of the will are not to be disturbed further than necessary to give effect to the codicil.

6. Where a will was executed disposing of all the testator's property to his son, but providing that the latter should not have possession or control for two years after the testator's death, and afterwards a deed was executed, but not delivered, by the testator, to take effect from and after his death, conveying certain property to a person other than the said son, and subsequent to such deed the testator executed a codicil to the will referring to and ratifying and confirming it in all respects, except as inconsistent with the codicil, and disposing of all property belonging to the testator at his death to a designated relative, in case of the son's death within two years after the testator's demise, and an action was brought by the alleged grantee in the deed to establish it as a codicil, alleging that it had been lost or fraudulently destroyed; *Held*, that the deed was revoked by the later codicil by the terms of the latter inconsistent with the deed.

ON PETITION FOR REHEARING.

1. Without deciding whether the rule would be the same in the case of every defective petition, it is *held* that where a petition containing a full and complete statement of all the facts does not state a cause of action, and is therefore insufficient to support a judgment for the plaintiff, it is not necessary to authorize an affirmance on error of a judgment in defendant's favor, on the ground that prejudice is not shown because the facts stated by the petition would not support a judgment for plaintiff, that the defendant should have filed a cross-assignment of error based on the overruling of his demurrer to the petition.

2. Whether an undelivered deed which was to take effect only at the death of the grantor, and is claimed to have been a testamentary devise, be construed as a codicil to a previous will or as a will by itself, a codicil to the previous will of later date than the deed, and inconsistent with and repugnant to the deed, will operate as a revocation thereof.

[Decided April 15, 1907.]          (89 Pac., 572.)
[Rehearing denied October 7, 1907.]     (91 Pac., 836.)

ERROR to the District Court, Albany County, HON. DAVID H. CRAIG, Judge.

Action brought by Annie Pardee against Charles F. Kuster, Frederick Reinsberg, and Ludolph Abrams, as executor of the will of Charles Kuster, deceased, to establish an alleged lost will devising certain property to the plaintiff. Judgment was given for the defendants, and plaintiff prosecuted error.

*N. E. Corthell,* for plaintiff in error.

The presumption that a trial court is better able to judge between conflicting statements of witnesses than the appellate court (Rainsford v. Massengale, 5 Wyo., 1; Conway v. Merc. Co., 6 Wyo., 479) is not applicable to this case, nor the rule that a finding based on conflicting evidence will not be disturbed, for the reason that, (1) there is no substantial conflict between the witnesses; (2) nearly two-thirds of the evidence was documentary or by depositions. This court will weigh the evidence where the conflict is merely formal or unsubstantial. (Sherlock v. Leighton, 9 Wyo., 297.) And even in case of substantial conflict, the presumption in favor of the finding is correspondingly weakened when the evidence is largely in the form of depositions. (Yund v. Bank, 14 Wyo., 81; Williams v. Miles (Neb.), 94 N. W., 710; Lavelle v. Corrigale, 86 Hun, 135; Thorn v. Frazer, 60 Tex., 259.) So, where the case rests upon written instead of oral evidence, it stands in the appellate court substantially as though a case of original jurisdiction. (Butler v. Hannah, 103 Ala., 481; Ritmaster v. Brisbane, 19 Colo., 371; Baker v. Rockabrand, 118 Ill., 365; Durham v. Coal Co., 22 Kan., 243; Martin v. Brown, 4 Minn., 282.) The legal effect of ascertained facts is a question of law. (Seibel v. Bath, 5 Wyo., 409.)

The deed relied on by plaintiff was testamentary in character and not a present conveyance. (De Bajligethy v. Johnson, 23 Tex. Civ. App., 272; Bunnel v. Nesbit, 89 Ga., 290; Turner v. Scott, 51 Pa. St., 126; Smith v. Holden,

58 Kan., 535; Kelly v. Richardson, 100 Ala., 534; Nichols v. Emory, 109 Cal., 323; Lavtenschlager Est., 80 Mich., 285; Dye v. Dye, 108 Ga., 741; Barnes v. Stephens, 107 Ga., 436; Crocker v. Smith, 94 Ala., 295; Robinson v. Brewster, 140. Ill., 649.) The question of revocation is controlled somewhat by statute. (R. S. 1899, Secs. 4569, 4595.)

Statutes on this subject represent independent efforts of states to codify or declare the common law. The differences among them are what might be expected from a study of the common law cases, which are not entirely harmonious in details. An illustration may be found in point of the number of witnesses required to establish the contents of a lost will. Some authorities say that two unexceptionable witnesses are necessary, who saw and read the will and re-member the contents. (4 Burns Eccl. Law, 209; Hunter v. Gardenhire, 13 B. J. Lea, 58; 1 Woerner, Adm., Sec. 221.) Sometimes it is said that the will may be proved by one witness whose testimony is satisfactory. (Wychoff v. Wychoff, 1 C. E. Green, 401.) And corroborated declarations of the testator have been regarded as sufficient proof. (23 Ency. L., 151.) The various statutes are to be read as declaratory of the common law, according to the understanding of the Legislature. (1 Woerner, Adm., Sec. 221.)

Undoubtedly the reason of the conflict in the statutes lies largely in the minor differences in the authorities, which rendered legislation necessary to reduce the rules to certainty. It was not intended to abrogate remedies already existing; but rather to extend and advance the remedy. These statutes are, therefore, to be interpreted liberally. (Camp's Estate, 134 Cal., 233; Kitchens v. Kitchens, 39 Ga., 168; Lasance's Estate, 7 O. Dec., 246; Hook v. Pratt, 8 Hun, 102; Hall v. Gilbert, 31 Wis., 692.)

We are not to assume that the statute has erected an artificial barrier or placed a new and arbitrary requirement in the way of the procedure to set up a lost will. The requirement that it shall appear that the will was in existence

at the death of the testator or was fraudulently destroyed in his lifetime is simply an expression in another form of the presumptions of fact so familiar in the common law cases. It is another way of saying that the will must be a last as well as a lost will. If the testator kept the will under his own control and it cannot be found after his death, the natural inference is that he changed his mind and destroyed it himself. Upon these facts alone it ought not to be allowed. If somebody else destroyed the will, or if it be merely lost, then the inference is quite the opposite. To show that somebody else destroyed it is to rebut the inference of the revocation and set up the contrary. Fraud in the ordinary or positive sense is not necessary to be shown. (Hatch v. Sigman, 1 Dem., 519; Brookie v. Partwood, 84 Ky., 265; Schultz v. Schultz, 35 N. Y., 653; Forbing v. Weber, 99 Ind., 588; Forman's Will, 54 Barb., 274.)

We do not claim a destruction of the testamentary deed. That is one of two possible inferences. If it was not destroyed by someone besides the testator, then it was in existence at his death, and, therefore, valid and effectual to pass title to the grantee. It is not essential to determine what became of the will. (Page v. Maxwell, 118 Ill., 576; Sugden v. Lord St. Leonards, L. R. 1 Pro. Div., 202; Poulton v. Poulton, 1 Sw. & Tr., 55; Gardner v. Gardner, 177 Pa. St., 218; Scoggins v. Turner, 98 N. C., 135.)

The presumption most frequent and important in this class of cases is that arising from the custody of the will. This presumption is invoked by the defendants and, we understand, the one relied upon by the trial court. It is sometimes said to be a presumption of law. The decided weight of authority, however, as well as the obvious reason of the rule, is that it is a presumption of fact merely. It is sometimes said that if it appear that the lost will was in the custody of the testator and cannot be found after his death, the presumption is that he himself destroyed it with revocatory intent; and that if the will is left in the custody of another the contrary presumption arises. Upon both these

rules some conflict of authority exists, but, we think, they may be taken to be rules established by the weight of authority. In many cases the evidence does not clearly or conclusively show that the will was left in the exclusive custody of either testator or a third person. It may be left in their joint custody. The custody may have been varied and passed from one to another at different times, or there may be no testimony whatever as to whose custody the will was in. In such cases the presumptions are said to shift or vary, to increase or diminish in strength according to the circumstances and probabilities of the particular case. Very often, too, the character or strength of a presumption varies according as the evidence shows the custody to have been effective or ineffective to exclude any possibility of intervention by others. (Lane v. Hill, 68 N. H., 275; Spriggs v. Spriggs, L. R. 1 Prob. Div., 608; Hatson v. Hartley (O.), 74 N. E., 197.) The following cases are illustrative of the principles applicable to the circumstances of this case. (Whitley v. King, 112 E. C. L., 756; Frentes v. Gaines, 3 Woods C. C., 77; Gaines v. Chew, 2 How., 619; Gaines v. Hennen, 24 How., 553; New Orleans v. Christmas, 131 U. S., 191; Southworth v. Adams, 11 Bis., 256; Johnson's Will, 40 Conn., 587; Page v. Maxwell, 118 Ill., 576; McDonald v. McDonald, 142 Ind., 55; Steele v. Price, 5 B. Mon., 58; Ewing v. McIntyre (Mich.), 104 N. W., 787; Mann v. Balfour, 187 Mo., 290; Hildreth v. Schillinger, 10 N. J. Eq., 196; Jackson v. Betts, 6 Cow., 377; 9 Cow., 226; Cosgrove's Will, 65 N. Y. Supp., 570; Scoggins v. Furnam, 98 N. C., 135; Foster's Appeal, 87 Pa. St., 67; Gardener v. Gardener, 177 Pa. St., 218; Reeves v. Booth, 2 Mill. (S. C.), 334; McElroy v. Phink (Tex.), 76 S. W., 753; Harris v. Harris, 10 Wash., 555; *In re* Steinke's Will (Wis.), 70 N. W., 61.)

It appears from the testator's letter and his statements to numerous witnesses, that before his death he had manifested an affectionate regard for the plaintiff and solicitude for her welfare and a settled purpose not only to assist her

during his life, but to provide for her after his death; that he had set apart the particular property in controversy to this end; that he executed a document designed to carry this purpose into effect and placed it with other like documents in a supposedly safe place; that he often referred to this purpose as an accomplished fact and expressed his understanding and belief in it as such up to the very last moments of his consciousness; that he never expressed to anyone a change of purpose, and that no indication or motive is apparent or conceivable of a change of purpose; that he was actuated in what he did by a positive feeling of kindness and affection for the plaintiff rather than a merely negative purpose to deprive his son of the property, having otherwise liberally provided for him. The whole plan and disposition. of the estate was natural, reasonable and consistent with probability in every way.

(*On petition for rehearing.*) The decision does not deal with the questions presented upon the assignments of error. The defendant filed no assignment of cross errors. The sufficiency of plaintiff's petition is not, therefore, properly before this court. (Johnson v. Golden, 6 Wyo., 537; 2 Cyc., 1011; Bank v. Orr, 25 Ind. App., 71; Bldg. Asso. v. Thompson, 88 Ind., 407; Hanna v. Barrett, 39 Kan., 446; Robb v. Henry (Tex.), 40 S. W., 1046; Board v. Water Co., 32 Colo., 382; Trust Co. v. Burke (Colo.), 85 Pac., 692-695; Stowell v. Spencer, 190 Ill., 453; Keller v. Scranton, 200 Pa. St., 130; Muller v. McLaughlin (Tex.), 84 S. W., 687; Norvell-Shapleigh Co. v. Hall N. & M. Works (Tex.), 91 S. W., 1092.)

If·the codicil under which the plaintiff claims in this case was in law an addition to and a part of the original will, then it seems to us that the natural meaning which ought to be attached to the language in the second codicil ratifying and affirming the will must fairly be extended, not merely to the instrument executed on May 18, but also and in the same connection to the supplementary instrument executed

May 19; in other words the testator's will of May 18, included at the time of the last codicil the addition which had been made thereto by the instrument dated May 19, and the natural and logical meaning which ought to be attached to the ratification and affirmation of the original will is that such will, with the addition made to it the following day, was ratified and confirmed. This is the natural import of the act itself and the language of the second codicil. It seems reasonable that the testator merely intended thereby to provide for the contingency of his son's death, and not to revoke the first codicil. The intention of a testator is not to be defeated by applying the rule that the republication of a will draws to it the date of the earlier instrument. (6 Ency. L., 199.) A prior codicil is not to be deemed revoked by a subsequent one referring to the will by date and affirming it without mention of the prior codicil. (6 Ency. L., 198; 1 Jarman on Wills, 358; Goods of Turner, 64 L. T., 805; Gelbke v. Gelbke (Ala.), 6 So., 834; Quincy v. Rogers, 63 Mass., 291.)

*H. V. S. Groesbeck,* for defendants in error.

The plaintiff in error cannot recover upon her petition. A will and all codicils thereto are to be construed together as parts of one and the same instrument. (6 Ency. L. (2d Ed.), 179.) A codicil may have the effect of revoking a former one. (Id., 187.) An intention expressed by codicil to alter a will in one particular negatives by implication any purpose to alter in any other respect. (Id., 190-197.) Republishing one of two wills revokes the other one. (Crosbie v. MacDougal, 4 Ves. Jr., 616; Neff's App., 48 Pa. St., 501; Pickney's Will, 1 Tuck., 436; Goods of Thompson, L. R. 1 Prob. Div., 8; *In re* Garritt, 66 L. T., 379; *In re* Fisher, 4 Wis., 254; Wallpole v. Oxford, 3 Ves., 462; Payne v. Trappers, 7 Jur., 854; *In re* Chapman, 8 Jur., 902; 1 Jarman on Wills, 189, 191; Beach on Wills, 59.)

Upon plaintiff's claims we should have the strange spectacle of, (1) a will bequeathing and devising all of the realty of testator and nearly all of his personalty to his son,

the legatee, to be let into possession two years after the death of testator; (2) a "deed," a "will," or a "codicil" devising one lot or parcel of land to Mrs. Pardee; and (3) a codicil to the original will confirming it in every respect, except that in case of the death of testator's son, in the two years' period, then the half-brother should have and his heirs and assigns "unconditionally and without reserve" all the real and personal property belonging to the testator at the time of his death. It is impossible to consider these instruments in such a light as to construe them together, as the second in point of time is absolutely and unqualifiedly repugnant and contradictory to the original will and to the last will or codicil, which confirms it in every respect as to the property in controversy in this proceeding. The demurrer should have been sustained on the ground that the petition of plaintiff, which recites all of these instruments in full and attacks none of them, does not state facts sufficient to constitute a cause of action, and upon the other grounds set up in said demurrer. We insist further that the petition of plaintiff could not possibly support a judgment in her favor, and that it is impossible to so amend it as to support such a judgment. In addition to the authorities above cited, we also cite Hawke v. Euyart, 30 Neb., 149; Gilmore's Est., 154 Pa. St., 523; Matter of Stickney, 161 N. Y., 42; McIntyre v. McIntyre, 120 Ga., 67.

This action is evidently brought under the provision of Sections 4176 to 4183, Rev. Stat. 1899, which constitute a chapter of the Civil Code entitled, "To contest wills"; and this is found under the head of "Special Proceedings" in our Code of Civil Procedure. We apprehend that these sections and this procedure do not now apply in the case of lost and destroyed wills, which are evidently governed by the provisions of the Revised Statutes found in Sections 4594 to 4597, inclusive, relating to lost wills or destroyed wills. It is conceded, in fact, by the opposing brief that these sections govern the disposition of the case, but the method of procedure there pointed out has not been pursued; we urge that the omission and failure in this respect

are fatal to the plaintiff's case. We raised this question by the several demurrers of the defendants and in a portion of their answers, which were stricken out on motion. However, under the well known rule, the question of jurisdiction can always be raised as to the subject matter of the action even in the appellate tribunal for the first time. (Froebrich v. Lane, 45 Ore., 13 (106 Am. St., 634.) At the time of the answer and ever since, this action was barred, as the original will was not contested within one year after the same was admitted to probate, although all the facts stated in said petition were known to plaintiff, and must have been known to her and the witnesses to the three documents, at the time of the death of the testator.

The evidence of plaintiff as to testator's statements was inadmissible, and the case should have been dismissed for insufficient evidence. (Throckmorton v. Holt, 180 U. S., 552.) The intention shown by the later codicil could not be modified by parol testimony. (Hatt's Est. (Cal.); 79 Pac., 585; Colbert's Est. (Mont.), 78 Pac., 971.) There must be clear and convincing proof to establish the existence and contents of a lost will. (4 Wigmore's Ev., 2498; Kidder's Est., 66 Cal., 487.)

A will that cannot be found at the death of the testator, upon proper search made, is presumed to have been destroyed by him *animo revocandi*. This is particularly true where it is traced to the testator's possession and never traced out of it. The law presumes that the will was in his possession and so continued until he destroyed it. (Thornton on Lost Wills, Sec. 56; Collyer v. Collyer, 110 N. Y., 481.) Mere opportunity to destroy a will on the part of persons interested in establishing intestacy is not sufficient to rebut the presumption that the testator desroyed it for the purpose of revocation.

Scott, Justice.

On May 18, 1903, Charles Kuster made and executed his will containing among others the following recital, viz. :

"Second—As to my property, both real and personal, I make the following disposition to take effect upon my death, viz.:

"To my beloved son, Charles F. Kuster, I do give, grant and bequeathe all of my property, both real and personal, within the State of Wyoming; he, the said Charles F. Kuster, however, not to have possession, manage or control of the same for two years after my demise  *  *  *."

It is alleged that on the following day he signed an instrument, in form a deed, with covenants of warranty, purporting to convey to the plaintiff a house and lot situated in the City of Laramie, Wyoming, which instrument contained the following provision: "This instrument is to be in full force and effect from and after my death." On May 21, 1903, two days after the date of the purported deed, the testator made a codicil to his will as follows: "I, Charles Kuster, of Laramie, Wyoming, having made my last will and testament bearing date the 18th day of May, A. D. 1903, do make this codicil to be taken as a part of the same:

"First—I hereby ratify and confirm said will in every respect, save so far as any part of it is inconsistent with this codicil.

"Second—In case Charles F. Kuster, my son, should die within two years after my death, I give and bequeathe to my beloved half-brother, Frederick Reinsberg, of Germany, and to (his) heirs and assigns forever, unconditionally and without reserve, all the real and personal property belonging to me at my death.

"In testimony whereof, etc."

The deed was never delivered, and upon the death of the testator it could not be found. The testator died on July 14, 1903, and on the 16th day of August following the will, executed on May 18, 1903, and the codicil thereto, executed on May 21, 1903, was duly admitted to probate and the defendant, Abrams, who was nominated in the will, was duly appointed and qualified as executor. On July

23, 1904, the plaintiff commenced this action in the District Court of Albany County to establish the lost deed as a codicil to the will. She alleged in her petition that the deed had been lost during the testator's life or fraudulently destroyed after his death. Upon issue joined the case was tried to the court without the intervention of a jury, and the court found generally and rendered judgment for the defendants. The plaintiff brings the case here upon error.

The defendants object to the consideration of any of plaintiff's assignments of error on the ground that her petition filed in the court below does not state facts sufficient to constitute a cause of action. The sufficiency of her petition was raised by demurrer in that court and although it was overruled the defendants are not barred from raising the question here, for if such petition was not sufficient to support a judgment in her favor she cannot be heard to say that she was prejudiced by the entry of the judgment complained of. The will, codicil and deed are set out in the petition and the sufficiency of the latter turns upon the construction of these instruments considered together and thus constituting, as alleged by her, the last will of the testator.

By the terms of the will and the codicil all of the property, both real and personal, of which testator died seized was devised to his son, Charles F. Kuster. By the terms of the deed title to the house and lot should vest in the plaintiff on the death of the grantor, who is the same person as the testator in the will. The theory upon which this case was brought is that the deed never having been delivered to plaintiff no title passed by deed, and that the latter by its terms having held the title in abeyance until the death of the grantor that the deed was in effect a will or specific bequest of the property therein described. There is no question that the legal title of the property was in testator up to and at the time of his death; he therefore died seized of the same. Conceding that the contention of the plaintiff is correct, that the deed was in fact executed

and intended by testator, and that it should be construed by the court as a codicil, yet this would not prevent the testator from executing a codicil subsequent thereto and in conflict therewith. On the 21st day of May, 1903, or two days after the execution of the deed, the testator by the codicil re-affirms the provisions of the will executed by him three days before, except in so far as any part of it is inconsistent with the codicil. It is evident that the testator had in mind the provisions of the will to which this codicil was attached, for he expressly re-affirms those provisions and, without exception or recognition of any deed or specific devise, provides in the broadest terms that all of the property, both real and personal, of which he may die seized shall go to his son, if living, as provided in the will, and in case of his death, then to his half-brother. This codicil is of a later date than the deed which is sought to be established as a codicil, and it is apparent that its terms are in conflict with the deed. Giving the latter the effect contended for, plaintiff is in the position of claiming rights under a codicil which is in conflict with the terms of a later codicil to the will. It is well settled that the deed, if in fact it was a codicil to the will, must be construed as a part thereof, and in such construction the terms of a codicil later in date must govern when repugnant to or in conflict with the terms of the will or prior codicil thereto. (6 A. & E. Ency of Law, 186, and cases there cited.) And in this sense the word *will* is used to mean the will as first executed, together with all codicils, be they many or few, which have been added thereto, and the meaning and effect of which taken together is re-affirmed or changed by the last codicil; and the will so changed or re-affirmed speaks from the date of its republication by the last codicil. (Coale v. Smith, 4 Pa. St., 386; Graham v. Burch, 28 Am. St. Rep., 353; Gilmor's Estate, 35 Am. St., 855; Linnard's Appeal, 93 Pa. St., 316; 39 Am. Rep., 753; Hawke v. Euyart, 27 Am. St. Rep., 391; Matter of Stickney, 76 Am. St. Rep., 246; 161 N. Y., 42; McIntyre v. McIntyre, 102

Am. St. Rep., 71, and note p. 77.)   It is an established rule of construction that "the codicil shall change the will only in so far as the intent is manifest; and the provisions of the will are not to be disturbed further than is necessary to give effect to the codicil."   (Holden v. Blaney, 119 Mass., 421.)   The codicil, made and signed on May 21, 1903, re-published the will, and took no notice of the deed, and the title to the property described in the deed remained in tes-tator up to and at the time of his death.   The provisions of the will as originally drawn with respect to the property here involved were continued in force as and from the date of its republication by the terms of the codicil and were repugnant and antagonistic to the claim of the plaintiff; the codicil being of a later date than her deed must under the established rules of construction be deemed to express the intent of the testator.   Conceding the allegations of the petition to be true and that the lost deed was in fact exe-cuted as a codicil to the will, then upon reason and authority the deed so construed was revoked and of no validity—its terms and provisions being antagonistic to those of a later codicil.

Upon the facts alleged in the petition and in this view of the case it becomes unnecessary to discuss the evidence the sufficiency of which is in dispute and upon which the court found for the defendants; nor is it here necessary to dis-cuss the rules governing the establishment of lost wills, for as already indicated if the evidence was sufficient for this purpose still by the rules of construction the finding and decree of the court was right and should not be disturbed.

The judgment will be affirmed.                    *Affirmed.*

POTTER, C. J., and BEARD, J., concur.

ON PETITION FOR REHEARING.

SCOTT, JUSTICE.

The plaintiff in error has filed her petition for a rehear-ing upon the ground that the defendants in error filed no

cross-assignment of error to the overruling of their demurrer to the petition. It is urged that in the absence of such cross-assignment the question of the sufficiency of the petition was not before the court. Taking that view, she submitted no oral argument thereon, nor did she refer to this question in her brief. The defendants in error called this court's attention to the question and devoted a considerable part of their brief to its discussion.

The case is analogous to Fell v. Muller, 78 Ind., 507, in which it was said: "The real question for discussion in this case is: Did the appellant's complaint state a cause of action in their favor against the appellee? If it did not state a valid or sufficient cause of action against the appellee, and we think it did not, then it is clear that the appellants were not harmed by any of the rulings of the trial court adverse to them and the judgment below must be affirmed." In that case there was no assignment of cross error and the decision turned on the provisions of the civil code of that state to the effect that no judgment shall be reversed by reason of any error or defect in the proceedings which does not effect the substantial rights of the adverse party. Sec. 3744, R. S. Wyo., 1899, is as follows: "No exception shall be regarded unless it is material and prejudicial to the substantial rights of the party excepting." In order that the exception may be considered, it must be material to a substantial right. It is just as essential to show a substantial right either by the pleadings or the record as it is to preserve the exception. A failure to do either would furnish no basis for a review of an alleged error. That there is no substantial right upon the whole case may appear from the allegations of the petition, though where there has been a trial it is not generally so, and in most cases that question involves an examination of the entire record. If the party complaining shows by his petition that no valid cause of action exists in his favor against the defendant, then he has failed to show a substantial right, and in such case any and all of his exceptions should be disregarded because

harmless. It will be observed that the petition was not defective by reason of the absence of averment or want of allegation of an existing fact. The execution of the deed, its terms, the time and the purpose for which it was executed are alleged and taken in connection with the other allegations clearly set forth the claim of the plaintiff. She was bound by the allegations of her petition and nowhere, either in the record or by suggestion in the argument, does it appear, nor are we able to discover that any amendment could be made. The defect goes to the question as to whether she has any cause of action, or right to recover, upon a full and complete statement of all the facts. The error is fundamental in that it affirmatively appears that no allegation of an existing fact can be brought into the petition by way of amendment and thereby perfect it so that it would support a judgment in her favor. The error is not in failing to plead all the facts, but rested in an attempt to predicate a right of recovery upon a complete statement of facts when no such right exists. It is not the defective statement of a cause of action, but a showing of no cause of action. Such a petition can neither be cured by answer, verdict or judgment. (Giddings v. Baker, 2 O. St., 21.) This case is distinguishable from the Indiana cases (Anderson, &c., Assn. v. Thompson, 88 Ind., 405; Farmer's Bank v. Orr, 25 Ind. App., 71, 89) cited by plaintiff in error in support of her petition. In those cases the defect did not consist in the absence of any cause of action, but did consist in the omission of a material averment in the allegations of an existing cause of action. The theory of those cases is that by failing to demur or to assign cross error the pleadings were treated by the parties as being complete, and it was presumed that evidence was submitted and heard and findings made upon issues necessary to support a judgment even though there may have been an absence of averment of some material fact. (Secs. 471, 720, Elliott App. Proc.)

The defendants in error asked no affirmative relief—they had obtained a judgment in the court below with which

they were satisfied. They sought neither to vacate nor modify it and did not assign the ruling on the demurrer as error prejudicial to them or at all. The finding and judgment being in their favor, the overruling of the demurrer was not available to them. (Blessing v. Blair, 45 Ind., 546; Rogers v. State, 99 Ind., 218; Reddick v. Keesling, 129 Ind., 128; 28 N. E., 316; Allen v. Berndt, 133 Ind., 355; 32 N. E., 1127; Thrash v. Starbuck, 145 Ind., 673; 44 N. E., 543; Levi v. Allen, 15 Ind. App., 38; 43 N. E., 571.) Nor was the decision based upon the exception to such ruling. The presumption of the correctness of the judgment was necessarily against the contention of the plaintiff in error and the burden was on her not only to show error upon the record (Sec. 4249, R. S. 1899), but that the error complained of was material and prejudicial to her substantial rights. (Sec. 3744, R. S. 1899.) In this jurisdiction a defendant in error has always been accorded the right, without assigning cross error, to direct our attention to different parts of the record presented for review to show that an alleged error was not prejudicial. All parts of the record so presented are accessible to the defendant in error for that purpose. When the complete record is before the court, as it was in this case, the justice of the rule is apparent. It is not within the power of the plaintiff in error to open the record at certain places to sustain his contention and close the balance to the defendant in error. The entire record was in the court for the benefit of the parties and the court. The pleadings constituted a part of the record of the case. (Sec. 1, Chap. 3, S. L. 1901.) If the erroneous admission of evidence may be shown to be without prejudice by consulting other parts of the bill, we see no reason why it could not also be shown by consulting the pleadings, for the latter are as much a part of the record as is the bill. The materiality of the evidence is determined by the issues, and when the petition affirmatively shows the non-existence of any legal cause of action there can be no issues of fact and no right of recovery. Hence, the admission or rejection of any

evidence would be harmless to the plaintiff. She had no standing in court and is, therefore, not in a position to allege or urge prejudicial error. When no affirmative relief is sought the defendant in error is not precluded from showing from the record the non-prejudicial character of the error complained of, and we hold that this rule is sufficiently broad to enable him, without assigning cross error, to urge that a full and complete statement of the facts as appears in the petition in this case constitutes an affirmative showing of no cause of action or right of recovery in the plaintiff, and that it would not for that reason support a judgment in her favor. It should be remembered that what is here stated and what we said in the opinion filed is directed and applies to the kind of a petition involved in this case, and we here express no opinion as to one which is defective merely by reason of the absence of averment.

The plaintiff in error has presented a brief upon her contention as to the construction which should be placed upon the documents construed together as the last will of the testator. We discussed the question in the opinion filed and after considering the authorities cited in her brief we find nothing in conflict with that opinion. We are still of the opinion that the reference in the codicil is not merely by date, but by other words which clearly indicate that it was the document executed on May 18, 1903, by itself which was within the contemplation of the testator. (McLeod v. McNabb, App. Cases (1891.) It may be conceded that when A. devises to B. and over to C., the latter upon the accrual of his right takes all of the property which B. would have taken under the will. By the codicil the testator substituted Reinsberg as devisee in case of his son's death. It was evidently the intention of the testator to provide that the devise of his property as contained in his will should not lapse and as relating back and showing the extent of that devise the language used in the codicil is material. It is from the context of the will and the codicil thereto that this question must be determined. It will be

noticed that the codicil does not merely confirm the former devise and say that in the event of the death of the primary devisee then the property devised to the latter shall go to Reinsberg, but it goes further and designates the property devised over; it says that in that event all the real and personal property owned by testator at the time of his death shall go to Reinsberg, his heirs and assigns forever, unconditionally and without reserve. It ·is unreasonable in the face of this language which discloses the evident purpose of testator to prevent a lapse of the previous devise to his son to say that such previous devise was less in its scope than the devise over. The language of the codicil as a whole shows that the testator must in confirming the provisions of his will have intended his confirmation of the devise to his son to be equally as broad as the devise over to Reinsberg. If title to the property described in the deed vested in petitioner, then no contingent interest therein vested at the same time in Reinsberg upon the death of the testator. The latter's title was to accrue and vest upon a contingency disassociated with and antagonistic to the idea of the ownership of the property ever having passed to plaintiff in error. The title by devise to the property in controversy never vested in Reinsberg, nor could it except upon the hypothesis that the testator contemplated and by his codicil confirmed and· ratified by itself the document which was executed on May 18, 1903. This intention of the testator is apparent and clearly appears from the codicil. It is not a case of latent ambiguity calling for parol testimony, nor is it so contended, and the question was one of construction to be determined and ascertained from the words and language used by the testator in these documents. (Secs. 956, 1025, 49, Cent. Digest.) The later codicil operated as a complete revocation of the former devise of the same property to the plaintiff in error regardless of whether the testamentary deed be construed as a codicil or treated as a will by itself. (1 Jarman on Wills, 171, 173; Rood on Wills, Sec. 336, and cases cited in sup-

port of the text; 1 Redfield on Wills, 350, 351, and cases there cited.) It does not appear that the conclusions reached in the opinion filed are in any wise erroneous or that any new questions are presented by the petitioner.

*Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.